IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LARRY ROLLAND TURNER, JR., )
       Plaintiff, )
        )
    v. )    2:14-CV-709
        )
        )
COMMISSIONER OF SOCIAL )
SECURITY, )
       Defendant. )

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the plaintiff's motion for summary judgment (ECF. 12) be denied; that the defendant's motion for summary judgment (ECF. 18) be granted and that the decision of the Commissioner be affirmed.

II.    Report

Presently before the Court for disposition are cross motions for summary judgment.

On June 3, 2014, Larry Rolland Turner, Jr. by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing his claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423.

On November 18, 2010, the plaintiff filed an application for disability benefits alleging that he had been disabled since February 1, 2010 (R.157-158), and benefits were denied on July 25, 2011 (R. 86-95, 101-105). On August 12, 2011, the plaintiff requested a hearing (R.106) and pursuant to that request a hearing was held on October 2, 2012 (R.37-85). In a decision dated

1

October 18, 2012, benefits were denied (R.15-31), and on November 9, 2012, reconsideration was requested (R.14). Upon reconsideration and in a decision dated April 18, 2014, the Appeals Council affirmed the prior determination (R.1-3). On June 5, 2014, the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act.

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999).

At the hearing held on October 2, 2012 (R.37-85), the plaintiff appeared with counsel (R.39) and testified that he was born on June 10, 1967 (R.47); that he earned a G.E.D. (R.48); that he can read, write and perform simple math (R.48) and that he worked as a subcontractor, mechanic, truck driver, laborer, welder, traffic controller, auto repairman, metal grinder and box builder (R.49-55).

The plaintiff also testified that he suffers from hypertension, diabetes, hyperlipidemia, obesity, right hearing loss, lupus coagulation, GERD, obstructive sleep apnea, left shoulder

2

rotator cuff pain, left leg deep vein thrombosis, right knee fracture, spinal low back degenerative disc disease and a fractured left wrist (R.55-68); that he takes medication for blood pressure, diabetes, cholesterol and coagulation (R.56-60); that he can walk one hundred feet, stand for about an hour and sit for an hour to an hour and a half (R.68-69); that he can lift with his right arm but not with his left (R.70) and that he does not perform any household chores (R.73).

At the hearing a vocational expert was called up to testify (R.77-83). He classified the plaintiff's prior work as medium exertional semi-skilled labor (R.78). When asked to assume an individual of the plaintiff's age, education and work experience who is able to perform medium to light work activity, the witness testified that while such an individual could not perform the plaintiff's prior work, there are many jobs existing in the national economy that such an individual could perform (R.78-82). However, the witness also testified that if the individual could only stand, walk or sit for limited time periods, then he could not be employed (R.82-83).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate

3

area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

The plaintiff was treated at the Community Health Center of Butler between November 12, 2009 and January 18, 2010 for left shoulder pain and diabetes (R.290-298).

The plaintiff was hospitalized at Butler Memorial Hospital from August 16, 2010 through August 19, 2010 for a left leg deep vein thrombosis, positive lupus anticoagulant, and uncontrolled diabetes. He was placed on medication and discharged in stable condition (R.299-320).

The plaintiff was hospitalized at Butler Memorial Hospital from August 31, 2010 through September 3, 2010 for recent left leg deep vein thrombosis, rectal bleeding, lupus anticoagulant,

hypertension, diabetes, hypercholesterolemia, gastroesophageal reflux disease and mild anemia. He was continued on his medication (R.321-330).

The plaintiff was treated by Edward Balestrino, D.O. on September 8, 2010 for hypertension. His medication was changed. (R.457-463).

The plaintiff was treated by the Visiting Nurses Association between August 20, 2010 and September 24, 2010 to teach plaintiff about maximizing circulation, diabetes care, disease management, strength management and independent transfers. (R.331-422).

The plaintiff was treated by Dr. Brad Amos on September 29, 2010 for contact dermatitis and acne. Medication was prescribed. (R.464-469).

The plaintiff was treated with medication by Dr. Cynthia K. Evans between September 28, 2010 and January 11, 2011 for his hypercoagulable condition. (R.423-427).

The plaintiff was treated by Dr. S. Joshua Szabo between May 10, 2010 and January 17, 2011 for left shoulder pain and weakness. Steroid injections, nerve blocks, physical therapy and surgery were performed. (R.428-456).

On February 15, 2011, Edward E. Balestrino, D.O. cleared the plaintiff for surgery. (R.470-477).

The plaintiff was treated at Butler Memorial Hospital between August 20, 2009 and February 22, 2011. A left shoulder rotator cuff repair, acromioplasty and capsular release were performed. He received physical therapy. The plaintiff was also treated with medication for left leg thrombosis and also had rectal bleeding and uncontrolled diabetes. (R.478-713).

The plaintiff received pre and post-operative evaluations of his shoulder at Tri Rivers Surgical Associates between February 22, 2011 and March 7, 2011. (R.714-721).

The plaintiff was treated at Butler Orthopedic Associates between February 17, 2011 and March 9, 2011. Further shoulder surgery was recommended. (R.722-727).

In a report of a physical capacity assessment completed on March 18, 2011, it was noted that the plaintiff can continuously walk or sit for eight hours but was unable to carry anything due to use of loss of his left arm. (R.728-731).

In a report covering the period from February 8, 2011 through May 17, 2011, Dr. Cynthia K. Evans recommended against treatment of plaintiff's lupus anticoagulant condition. It was observed that he had tolerated his surgery well. (R.1000-1003).

Edward E. Balestrino, D.O. treated the plaintiff for chronic lumbar pain between April 18, 2011 and May 18, 2011. Pain clinic attendance and medication were prescribed. (R.732-740).

The plaintiff was treated by Dr. S. Joshua Szabo between January 10, 2011 and June 13, 2011 for a nonhealing recurrent left rotator cuff tear following surgery. (R.741-755).

The plaintiff was examined at Grove City Primary Care on June 13, 2011 where a history of chronic back and shoulder pain, as well as type II diabetes was diagnosed. It was reported that the plaintiff could left up to fifty pounds, stand or walk without limitation and sit for up to four hours. (R.756-766).

The plaintiff was treated by Edward Balestrino, D.O. between May 18, 2011 and March 20, 2012 for obstructive apnea, hypertension, hyperlipidemia, type II diabetes and edema. Medication was prescribed. (R.767-798).

The plaintiff was treated at the Butler Memorial Physical Therapy/ Pain Clinic between July 6, 2011 and April 9, 2012 for radiating back pain. Steroid injections and nerve blocks were administered. (R.880-914).

The plaintiff received rehabilitation treatment at the Butler Memorial Hospital between December 10, 2010 and June 6, 2012 for shoulder pain. (R.939-999).

The plaintiff was treated by Dr. Robert Hornsby on June 6, 2012 and a diagnosis of type II diabetes, hypercholesterolemia, marked obesity and sleep apnea was made. Medication was prescribed. (R.799-810).

The plaintiff attended physical therapy for his left hand and wrist at Keystone Rehab between May 7, 2012 and June 22, 2012. Active range of motion exercises were conducted. (R.811-879).

Wrist x-rays taken on March 22, 2012 and August 7, 2012 revealed a healed left radius fracture (R.1006-1010).

A thoracic spinal x-ray taken August 23, 2012 was negative for a compression fracture and revealed mid to lower degenerative disc disease.(R.1004-1006).

The plaintiff was treated by Dr. Peter N. Sotos, an orthopedic surgeon, between February 6, 2012 and August 24, 2012 for lumbar pain resulting from lumbosacral disc degeneration and a wrist fracture. Medication was prescribed. In a physical capacity evaluation completed on September 11, 2012, the doctor noted that the plaintiff could stand or walk for ten minutes and sit for fifteen minutes. It was noted that the plaintiff could lift five to ten pounds. (R.915-938).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit-- but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in

assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

Based on the evidence presented, the Commissioner concluded:

The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

The claimant has not engaged in substantial gainful activity since February 1, 2010, the alleged onset date…

The claimant has the following severe impairments: hypertension, diabetes mellitus, obesity, gastroesophageal reflux disease, obstructive sleep apnea, shoulder rotator cuff tear status post two surgeries, right knee fracture/strain, and low back degenerative disc disease…

Although referenced in his medical records, I do not find that the claimant's hyperlipidemia, lupus anticoagulant, deep vein thrombosis, left wrist fracture, or hearing loss, singly or in combination more than minimally limit the claimant's ability to perform basic work activities, and I am therefore treating them as "non-severe"…

As for the claimant's lupus antricoagulant and deep vein thrombosis, he was hospitalized for three days in August 2010 – six weeks after his left-shoulder surgery. Testing was positive for lupus anticoagulant, and the claimant was found to have deep venous thrombosis for which he was treated with Coumadin. The claimant was hospitalized again for three days later that month for rectal bleeding attributed to hemorrhage from "excessive anticoagulation". An inferior vena cava filter was also inserted in September 2010 and removed in November 2010. May 2011 records from hematologist Cynthia K. Evans, M.D., confirmed that repeated testing was negative for lupus anticoagulant, such that Coumadin could be discontinued. There are no records of any further treatment for lupus anticoagulant or deep vein thrombosis… and the claimant confirmed … that these conditions had completely resolved within a year of onset. Accordingly, lupus anticoagulant and deep vein thrombosis are considered to be non-severe impairments because they did not cause more than minimal restrictions for a durationally significant period of 12 months or more.

Similarly, the claimant fractured his left wrist in January, 2012 and his arm was placed in a cast, although May 2012 x-rays confirmed that his fracture had healed satisfactorily… Although the claimant testified that he continues to experience occasional sharp wrist pain … and swelling of his hand and fingers, there is little to suggest more than minimal work-related limitations due to the claimant's wrist injury…

[L]isting 1.02B ([pertaining to shoulder impairment] is not met because the record does not show an inability of the claimant to perform fine and gross movements effectively...treatment records referenced the claimant engaging in a wide range of activities such as gardening, mechanical work, repairing cars, and performing household chores…

Listing 1.04, disorders of the spine, is also not met because the record does not demonstrate compromise of a nerve root or the spinal cord with additional findings…

Furthermore, even though there is no longer a listing for obesity, the claimant's weight has also been considered. However, there is no indication that the claimant's obesity, alone or in combination with any other impairment, gives rise to a condition of listing-level severity.

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work… except he cannot lift, carry, grasp, push, pull or do any fine manipulation with the left arm; can occasionally balance; can never crawl; can frequently climb ramps or stairs; can frequently climb ladders, ropes, or scaffolds; can frequently stoop, kneel and crouch; can never reach; and he must avoid concentrated exposure to wetness…

[W]henever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record…

Despite the claimant's multiple complaints, a physical examination [in June 2011] was largely normal, with the claimant exhibiting a nearly full range of motion in all extremities… and no atrophy. He also had no difficulty getting up from [a] chair, getting onto the examination table, or moving from a squatting to standing position… Dr. Sawardekar assessed the claimant as capable of lifting fifty pounds frequently… and 10 pounds occasionally to shoulder level, with no lifting over shoulder level. He was also assessed as being able to sit for four hours a day, stand without limitation, and frequently engage in postural movements, with some limitations in pushing and pulling with the upper extremities. Dr. Sawardekar's opinion is given significant weight as the assessment of an examining physician who is familiar with the Social Security program rules…

Generally consistent with the opinion of Dr. Sawerdekar are the 2011 assessments of Dr. Szabo which are also given significant weight… Giving the claimant some benefit of the doubt, I am limiting him to only a range of light work with significant restrictions on the use of his left arm. However, consistent with the assessments of Dr. Szabo, as well as with the claimant's later treatment records

> and documented activities, it is clear that the claimant's impairments are not of disabling severity.
>
> In contrast, little weight is given to the September 2012 … statement of Dr. Sotos, who assessed the claimant as able to stand or walk for only 10 minutes at a time, or sit for 15 minutes at a time, with only two hours total sitting and one hour total standing in an eight-hour workday. Dr. Sotos also noted restrictions of carrying or lifting of only up to 10 pounds, no use of foot controls, and no postural maneuvers other than occasional reaching…
>
> Regarding the claimant's credibility, his testimony as to his symptoms and limitations is not consistent with the medical evidence in numerous aspects …
>
> In summary, for the reasons discussed above, I find that the residual functional capacity assessment fully accounts for all of the claimant's reasonably demonstrated limitations …
>
> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform…
>
> [B]ased on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate … (R.20-30).

The record demonstrates that while the plaintiff complains of many physical ailments, they do not appear to be supported by the medical evidence of record, especially the evidence submitted by treating physicians. Rather, his allegations versus the medical evidence creates a credibility question which is left for resolution by the Commissioner. Morales v. Apfel, 225 F.3d. 310, 317 (3d Cir.2000).

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. Lichtenstein v. U.P.M.C, 691 F.3d 294, 300 (3d Cir. 2012). In the instant case, there are no material factual issues in dispute, and it appears that the Commissioner's conclusion is supported by substantial evidence. Accordingly, it is recommended that the plaintiff's motion for summary judgment (ECF. 12) be denied; that the

defendant's motion for summary judgment (ECF. 18) be granted, and that the decision of the Commissioner be affirmed.

Within fourteen days after being served with a copy, any party may serve and file written objections to the report and recommendation. Any party opposing the objections shall have fourteen days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,  
s/ Robert C. Mitchell  
United States Magistrate Judge

Dated: January 29, 2015